**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONNE DAWSON,<br><br>*Plaintiff*,<br><br>v.<br><br>EQUITABLE HOLDINGS, INC.; and<br>EQUITABLE FINANCIAL LIFE INSURANCE CO.,<br><br>*Defendants*.<br>____________________<br>EQUITABLE FINANCIAL LIFE INSURANCE CO.,<br>*Counter-Plaintiff/Third-Party Plaintiff*,<br><br>v.<br><br>DONNE DAWSON and<br>KYLIE PUTMAN a/k/a KYLIE ARRELL,<br><br>*Counter-Defendants/Third-Party Defendants*. | **Civil Action No.**<br>**1:26-cv-01026-JAV** |

**THIRD-PARTY DEFENDANT KYLIE PUTMAN A/K/A KYLIE ARRELL'S ANSWER TO EQUITABLE'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT, COUNTERCLAIM AGAINST EQUITABLE, CLAIM AGAINST PLAINTIFF DONNE DAWSON, AND JURY DEMAND**

Comes now Third-Party Defendant Kylie Putman a/k/a Kylie Arrell ("Ms. Arrell"), through undersigned counsel, answers the Counterclaim and Third-Party Complaint for Interpleader filed by Equitable Financial Life Insurance Company ("EFLIC"), asserts the defenses available against Plaintiff Donne Dawson ("Dawson") under Federal Rule of Civil Procedure 14(a)(2)(C), asserts a counterclaim against EFLIC under Federal Rules of Civil Procedure 13 and 14(a)(2)(B), and asserts a claim against Dawson arising from the same Policy and proceeds under Rule 14(a)(2)(D).

**RESPONSIVE STATEMENT**

1. Ms. Arrell seeks a focused adjudication of one question: who owns the remaining one-half of the $2,000,000 death benefit under Term Life Insurance Policy No. 107003744 issued by EFLIC or its affiliates (as attached as Exhibit A to ECF No. 17, the "Policy"). Ms. Arrell claims exactly 50% of the death benefit: $1,000,000 in principal, together with all contractual, statutory, registry, and post-judgment interest attributable to that share. She does not claim any portion of the $1,000,000 principal already paid to Dawson.

2. The Policy answers the question, stating that the beneficiary is "as stated in the application, unless later changed," and that if two or more persons are named and survive Christopher M. Dawson ("Christopher"), they "will share equally unless otherwise stated." *See* Policy at 7. The signed application is attached to and expressly made part of the Policy. Id. at 9, 17.

3. In Section 3 of the Policy, entitled BENEFICIARY/OWNER, the policy (as applied for) identifies both "DONNE F. DAWSON" and "KYLIE M. ARRELL," as "Primary" beneficiaries, as shown in the image below, which is an accurate copy taken form page 17 of the Policy:

**3 BENEFICIARY/OWNER**

A. Beneficiary (Total designation must be 100%. Use Remarks section for additional Beneficiary information.)

| Beneficiary Full Name | Relationship to Insured | Percentage |
| --- | --- | --- |
| Primary: DONNE F DAWSON | SISTER | ~~100~~ 50% |
| KYLIE M. ARRELL | DAUGHTER | 50% |
| Contingent: | | |
| | | |

4. As shown, the Policy further specifies that Ms. Arrell's relationship to Christopher as "DAUGHTER" and clearly identifies "50%" in the column labelled "Percentage" on the line corresponding to Ms. Arrell's name. No contingent beneficiary is identified. Ms.

Arrell's claim therefore rests on her express designation as a Primary beneficiary and the express beneficiary percentage written beside her name.

5. The separate alleged "100%" notation upon which Dawson relies is unclear, as shows in the image. Upon magnifying section 3A of the application, it appears clear, that Christopher was trying to correct the percentages and crossed out and wrote over Ms. Dawson's percentage so that it would read "50%". The circumstances of the Policy support this view. As shown in the image, the form clearly instructs in the parenthetical that "Total designation must be 100%." Policy at page 17. Mr. Arrell is clearly identified as a second Primary beneficiary receiving 50%. To be consistent with the policy instructions, Christopher was correcting the error in his math to make the other distribution percentage 50%. The coherent construction that honors Ms. Arrell's express percentage and the Policy's equal-share default is 50% to Ms. Arrell and 50% to Dawson.

6. A facially impossible 150% total is not a valid non-equal allocation.

7. Dawson principally relies on a separate Policy Summary naming Dawson alone. But the Summary expressly states that it is only a brief overview and "does not represent nor amend" the Policy's governing terms. ECF No. 1-1 at 2. More importantly, on April 26, 2007, Christopher signed an Amendment to Application that expressly states that the amendment is "a proposal illustrating the values of the contract *as issued*" (emphasis added), and expressly confirmed that that amendment is part of the application and "in all other respects the statements and answers in the application continue to be, without material change, true and complete". Policy at 22. Such statements necessarily include the beneficiary percentages.

8. The Delivery Receipt signed the same day is not the Summary, identifies no beneficiary, makes no beneficiary change, and independently confirms that the statements in all

parts of the application remained true and complete at delivery. ECF No. 1-1 at 17. EFLIC likewise denies that Christopher acknowledged the Policy Summary and pleads that the Contract consists solely of the Policy, riders and endorsements, and application. ECF No. 17 ¶¶ 11, 40.

9. No later beneficiary change exists. EFLIC alleges in both its operative pleading (ECF 17) and its July 15, 2026 Motion to Deposit Disputed Funds (ECF 32) that it has no record of any post-issuance request to change the beneficiary, that the Policy provides equal shares when two or more named beneficiaries survive unless otherwise stated; that the application lists Dawson and Ms. Arrell on separate Primary-beneficiary lines and identifies no contingent beneficiary; that EFLIC paid Dawson exactly $1,000,000 in principal plus interest and retained exactly $1,000,000 in principal; and that EFLIC received Ms. Arrell's claim. ECF No. 17 at 15-17; ECF No. 32 ¶¶ 3-5, 10, 12. EFLIC also admits that its counsel informed Dawson that the application listed two Primary beneficiaries and that Dawson had a 50% share and moved to deposit the remaining $1,000,000 plus applicable interest as an amount due and owing under the Policy. ECF No. 17 ¶¶ 29, 41; ECF No. 32 at 1.

10. Dawson's own Complaint alleges that the application identifies Ms. Arrell as a 50% beneficiary, that EFLIC paid Dawson only 50%, that the payment material stated the remaining 50% was due to another beneficiary, and that EFLIC said it would pay that remaining 50% upon receipt of Ms. Arrell's claim. ECF No. 1 ¶¶ 10, 21-22, 29-31. Dawson cannot avoid the attached application by labeling Ms. Arrell's written designation "errant." Under Rule 10(c), the exhibit is part of the pleading, and its actual contents control over an inconsistent conclusory characterization. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

11. Dawson's requested declaration would effectively "reform" the written contract after Christopher's death by deleting a named Primary beneficiary. That would be counter to

Christopher's clear indication that there should be two Primary beneficiaries.

12. Dawson pleads no prior agreement between Christopher and EFLIC excluding Ms. Arrell, no mutual mistake in reducing such an agreement to writing, and no qualifying fraud that caused the attached application to misstate the parties' agreement. Even if she wanted to claim that the Policy somehow represents a mistake, Federal Rule 9(b) requires mistake to be pleaded with particularity. Hawaii law requires clear and convincing proof of a prior agreement that the writing failed to express because of mutual mistake, or one party's mistake coupled with fraud or inequitable conduct by the other; New York law imposes the same exacting burden. *See Fed. R. Civ. P. 9(b)*; *Gabriel v. Island Pac. Acad., Inc.*, 140 Haw. 325, 338, 400 P.3d 526, 539 (2017); *State v. Kahua Ranch, Ltd.*, 47 Haw. 28, 33, 384 P.2d 581, 585 (1963); *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 573-74 (1986).

13. Hawaii law governs the Policy. The Policy was delivered in Hawaii, and identifies Hawaii as the Contract State and the insured, Christopher, as a Hawaii resident. Under Hawaii Revised Statutes §§ 431:10-208(a), 431:10-220, 431:10-237, and 431:10D-102(a)(2), the attached application is part of the entire contract and a conflicting or modifying agreement is ineffective unless written into the Policy. The Policy itself independently requires a written, owner-signed beneficiary change received at EFLIC's Administrative Office. Policy at 7.

14. Ms. Arrell does not oppose immediate deposit of the complete remaining $1,000,000 principal and every dollar of interest due through the deposit date, without deduction by EFLIC, as sought in EMF No 32. She asks the Court to preserve the entire fund, reject Dawson's claim to Ms. Arrell's half, deny any request to charge EFLIC's ordinary litigation expenses against her portion of the beneficiary fund, and set a speedy hearing under Rule 57 so that Ms. Arrell's half of the proceeds can be adjudicated and disbursed promptly. Collateral trust

and probate disputes are intentionally not joined here because they would distract from the clean contract issue and belong, if pursued, in the appropriate proceeding.

## GENERAL RESPONSE PROVISIONS

15. Except as expressly admitted, Ms. Arrell denies every allegation, characterization, legal conclusion, and request for relief asserted against her.

16. A response that a document speaks for itself admits only the authentic text of that document and does not admit an opposing party's characterization, inference, legal effect, completeness, or admissibility.

17. EFLIC restarts and duplicates paragraph numbering in the interpleader portion of ECF No. 17. Ms. Arrell therefore identifies both the relevant heading and paragraph number below.

## ANSWER TO EFLIC'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT

**Introductory 1.** Admitted only to the extent that EFLIC purports to invoke Rule 22 and seeks interpleader relief. It is denied that Rule 22 entitles EFLIC to relief broader than protection against duplicate payment of the complete and correctly calculated stake.

**Parties 2.** Admitted.

**Parties 3.** Upon information and belief, it is admitted that Dawson is a citizen of Hawaii. Otherwise denied.

**Parties 4.** Admitted that Ms. Arrell is a citizen of Hawaii. Otherwise denied.

**Jurisdiction 5.** Admitted that the Court has diversity jurisdiction under 28 U.S.C. § 1332, subject to proof of jurisdictional facts. Rule 22 is procedural and does not independently confer subject-matter jurisdiction.

**Venue 6.** Ms. Arrell does not presently contest venue for adjudication of the Policy dispute. No unrelated objection or right is waived.

**Factual 1.** Admitted that EFLIC issued a $2,000,000 life-insurance policy on Christopher, Policy No. 107003744, subject to the complete Policy, attached application, and signed Amendment to Application. The authentic documents speak for themselves.

**Factual 2.** Admitted. The Policy states that the beneficiary is as stated in the application unless later changed and that two or more surviving named persons share equally unless otherwise stated. Policy at 7. Ms. Arrell further states that the attached application expressly designates her as a Primary beneficiary and places 50% beside her name.

**Factual 3.** Admitted that the application lists Dawson and Ms. Arrell on separate lines under the same "Primary" heading, identifies Ms. Arrell as Christopher's daughter, places "50%" beside Ms. Arrell, and identifies no contingent beneficiary.

**Factual 4.** The allegations of Factual Paragraph 4 do not pertain information in the control of Ms. Arrell.

**Factual 5.** Admitted.

**Factual 6.** Ms. Arrell lacks knowledge sufficient to admit EFLIC's internal claims-handling procedures or legal compliance and therefore denies the paragraph, except that she admits a claim process occurred.

**Factual 7.** The allegations of Factual Paragraph 4 do not pertain information in the control of Ms. Arrell and accordingly are denied, except that it is admitted that EFLIC alleges its electronic system reflected Dawson alone because of a manual data-entry error. It is explicitly denied that an internal electronic entry amended the Policy or the attached application.

**Factual 8.** Ms. Arrell lacks knowledge sufficient to admit the substance or completeness of EFLIC's communications with Dawson or her representatives and therefore denies the paragraph, except that no such communication amended the contract.

**Factual 9.** Upon information and belief, admitted that Dawson submitted a claim on or about July 16, 2025.

**Factual 10.** Admitted.

**Factual 11.** Admitted that Dawson filed the Complaint on February 5, 2026, but any claims contained therein that Dawson is the sole beneficiary or is entitled to the remaining proceeds are expressly denied.

**Factual 12.** Admitted that EFLIC received Ms. Arrell's Claim to Life Insurance Benefits Form on February 10, 2026.

**Factual 13.** Admitted, though it is expressly denied that Dawson's adverse claim has merit.

**Factual 14.** Admitted, but it is expressly denied that the existence of an adverse claim establishes EFLIC's entitlement to a fee award, an overbroad injunction, or a discharge extending beyond the complete and correctly calculated stake.

**Factual 7 (duplicate number).** Admitted.

**Count I 8.** Ms. Arrell incorporates her foregoing responses.

**Count I 9.** The allegations of Count I Paragraph 9 do not pertain information in the control of Ms. Arrell and the parties are left to their burdens of proof.

**Count I 10.** Admitted that EFLIC admits liability under the Policy. Ms. Arrell lacks knowledge sufficient to admit that EFLIC has "always" been ready and willing to pay the proper recipient.

**Count I 11.** Admitted.

**Count I 12.** The allegations of Count I Paragraph 12 do not pertain information in the control of Ms. Arrell and therefore denies the same.

**Count I 13.** Admitted only to the extent that interpleader provides a procedural means to protect against inconsistent adjudications of a single stake.

**Count I 14.** Admitted that EFLIC claims no ownership interest in the remaining proceeds and represents that it will deposit them with accrued interest. Denied that this representation alone establishes that EFLIC is an innocent stakeholder or is entitled to charge fees against the beneficiary fund.

**Count I 15.** Denied. Any injunction must rest on independent authority, satisfy Rule 65, and extend no further than necessary to prevent a duplicative proceeding seeking the same deposited stake and EFLIC is left to its burdens of proof.

**Count I 16.** Denied. Any discharge should be limited to EFLIC's obligation to pay the principal and interest actually and correctly deposited and should not authorize an underfunded deposit, an erroneous interest calculation, or a deduction of EFLIC's fees from the beneficiary fund.

**WHEREFORE** Ms. Arrell prays that only that the Court may permit a properly limited Rule 22 interpleader, and any broader relief sought should be denied.

## AFFIRMATIVE AND OTHER DEFENSES

**FIRST DEFENSE - Rule 22 Is Procedural and Limited**

Rule 22 protects a stakeholder against multiple liability on a single obligation; it does not enlarge the stake, determine entitlement merely upon deposit, or authorize relief unrelated to the deposited funds.

**SECOND DEFENSE - Complete Deposit and Accounting Are Required**

Before discharge or distribution, EFLIC must deposit the entire $1,000,000 principal and all contractual and statutory interest due through the deposit date, without any deduction by EFLIC for fees, costs, delivery charges, offsets, or recoupment, and must provide an itemized calculation identifying the rate and each period used.

**THIRD DEFENSE - Injunctive Relief Must Be Narrowly Tailored**

Because this is Rule 22 interpleader rather than statutory interpleader under 28 U.S.C. § 1335, 28 U.S.C. § 2361 does not itself supply nationwide injunctive authority. Any injunction must rest on independent authority, satisfy Rule 65, and be limited to a duplicative proceeding seeking the same deposited res.

**FOURTH DEFENSE - EFLIC Should Bear Its Own Fees**

EFLIC should bear its own attorneys' fees and ordinary claims-administration expenses. Interpleader of disputed insurance proceeds is part of an insurer's ordinary business, and a routine fee award would diminish the very beneficiary fund EFLIC was paid to administer.

**FIFTH DEFENSE - Any Discharge Is Limited to the Correctly Funded Stake**

Any discharge may extend only to EFLIC's obligation to pay the principal and interest actually and correctly deposited. It may not excuse an underfunded deposit, an incorrect interest calculation, or an unauthorized reduction of Ms. Arrell’s share.

**SIXTH DEFENSE - Statutory Interest and Conditional Fees Remain Due**

Interpleader does not eliminate interest that accrued before deposit. Under Hawaii Revised Statutes § 431:10-243(a), read with subsection (c), an action resulting in judgment carries interest from the insured's death through the verdict, report, or decision at EFLIC's current interest-settlement-option rate, but not less than six percent annually; subsection (b)

carries the same rate through payment if the action settles before decision. Subsection (e) prevents duplicate interest for a period governed by an interpleader law. If EFLIC contests liability to Ms. Arrell or any part of the principal or interest and is ordered to pay benefits, § 431:10-242 provides for reasonable attorneys' fees and costs.

## DEFENSES TO PLAINTIFF DONNE DAWSON'S COMPLAINT

Dawson did not name Ms. Arrell as a defendant in the original Complaint. The summons served with EFLIC's third-party pleading states that Ms. Arrell "may - but [is] not required to - respond" to Dawson's Complaint. ECF No. 19 at 1. Under Rule 14(a)(2)(C), Ms. Arrell nevertheless asserts the following defenses to prevent Dawson from obtaining relief that would impair Ms. Arrell's rights.

### FIRST DEFENSE - Failure to State a Claim to Ms. Arrell's Share

The Complaint does not state a plausible claim entitling Dawson to the $1,000,000 allocated to Ms. Arrell or to an injunction preventing payment to Ms. Arrell.

### SECOND DEFENSE - The Attached Application Is Part of the Entire Contract

The Policy, riders and endorsements, and attached application constitute the insurance contract. Hawaii Revised Statutes §§ 431:10-208(a), 431:10-220, 431:10-237, and 431:10D-102(a)(2) require the attached application to be read as part of that contract. The application names both Dawson and Ms. Arrell as Primary beneficiaries and places 50% beside Ms. Arrell.

### THIRD DEFENSE - The Complaint Exhibit Controls Over the "Errant" Label

The application attached to Dawson's Complaint is part of the pleading. Its actual content - two named Primary beneficiaries and 50% beside Ms. Arrell - controls over Dawson's unsupported characterization that Ms. Arrell's designation was "errant."

**FOURTH DEFENSE - The Policy Summary Is Noncontractual and Self-Disclaiming**

The Policy Summary expressly disclaims any power to represent or amend the Policy's terms. Hawaii Revised Statutes § 431:10-220 and the Policy's own entire-contract and beneficiary-change provisions foreclose using an unwritten or noncontractual record to modify the attached application.

**FIFTH DEFENSE - The Signed April 26 Amendment Reaffirmed Ms. Arrell's Designation**

On April 26, 2007, Christopher signed an Amendment to Application that contained only an illustration statement and expressly confirmed that, in all other respects, the application statements and answers remained true and complete without material change. That later signed writing reaffirmed Ms. Arrell's identification as a Primary beneficiary and the 50% written beside her name; it did not delete or reduce her designation.

**SIXTH DEFENSE - The Delivery Receipt Reinforces Rather Than Changes the Application**

The document at ECF No. 1-1 at 17 is a Delivery Receipt - not the Policy Summary. It identifies no beneficiary, states no amendment, and independently confirms that the statements in all parts of the application remained true and complete at delivery. The Complaint's contrary characterization is controlled by the exhibit itself.

**SEVENTH DEFENSE - No Later Beneficiary Change Exists**

Enforcing the original attached application, as reaffirmed by the April 26 Amendment and Delivery Receipt, is not a post-death amendment; it is enforcement of the contract as issued.

**EIGHTH DEFENSE - Express 50% Designation and Equal-Share Provision**

The application expressly identifies Ms. Arrell as a Primary beneficiary and places 50% beside her. The conflicting 100% notation beside Dawson cannot nullify that separate designation or authorize a 150% total. The Policy contains no normalization mechanism.

Independently, once the facially inconsistent percentage set cannot operate as a valid unequal allocation, the Policy's equal-share provision yields the same result: 50% to Ms. Arrell and 50% to Dawson.

**NINTH DEFENSE - Reformation Is Neither Pleaded Nor Plausibly Supported**

Calling Ms. Arrell's designation “errant” does not plead reformation. Dawson does not identify with particularity - much less support by the clear and convincing proof required for reformation - any prior agreement between Christopher and EFLIC excluding Ms. Arrell, any mutual mistake in reducing such an agreement to writing, or any fraud or inequitable conduct by EFLIC that caused the attached application to misstate an actual agreement.

**TENTH DEFENSE - Dawson's Change-of-Beneficiary Authorities Are Inapposite**

A noncontractual summary or internal data screen cannot delete a beneficiary named in the original attached application where no later change exists.

**ELEVENTH DEFENSE - Breach-of-Contract and Declaratory Claims Fail**

EFLIC did not breach Dawson's rights by refusing to pay her proceeds contractually allocated to Ms. Arrell. At Christopher's death, the entire contract included the attached application identifying both Primary beneficiaries. Dawson has already received the $1,000,000 principal share corresponding to one-half of the face amount, plus interest.

**TWELFTH DEFENSE - Promissory Estoppel Cannot Override the Contract**

A valid written contract governs beneficiary entitlement. Dawson pleads no clear and unambiguous promise transferring Ms. Arrell's written share, no reasonable detrimental reliance that could override the attached application, and no injury from EFLIC's refusal to pay her another beneficiary's proceeds.

**THIRTEENTH DEFENSE - Equitable Estoppel Cannot Divest a Nonparticipating Beneficiary**

Ms. Arrell made no representation to Dawson and induced no reliance. Equitable estoppel cannot rewrite the Policy, transfer a named beneficiary's proceeds to another claimant, or prejudice Ms. Arrell based on alleged statements made only by EFLIC or its representatives.

**FOURTEENTH DEFENSE - No Basis for Injunctive Relief or Additional Damages**

Dawson cannot show a likelihood of success, irreparable harm, or equities favoring an injunction that would prevent payment of proceeds designated to Ms. Arrell. The family, business, and caregiving circumstances alleged in the Complaint do not create a contractual or equitable right to Ms. Arrell's proceeds and are not damages caused by nonpayment of Ms. Arrell's share to Dawson.

**KYLIE ARRELL'S**
**COUNTERCLAIM AND CLAIM FOR RELIEF**

COMES NOW Ms. Kylie Arrell alleges the following counterclaim against EFLIC and claim against Dawson.

**PARTIES, JURISDICTION, VENUE AND GOVERNING LAW**

1. Ms. Arrell is a citizen of Hawaii.

2. Ms. Arrell is Christopher's daughter and a named Primary beneficiary in the application attached to the Policy.

3. EFLIC is a New York corporation with its principal place of business in New York and issued the Policy.

4. Dawson is a citizen of Hawaii, Christopher's sister, a named Primary beneficiary, and the claimant seeking the proceeds allocated to Ms. Arrell.

5. The Court has original diversity jurisdiction over Ms. Arrell's counterclaim against EFLIC under 28 U.S.C. § 1332 because Ms. Arrell and EFLIC are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. The Court has supplemental jurisdiction over Ms. Arrell's claim against Dawson under 28 U.S.C. § 1367 because it forms part of the same case or controversy concerning the same Policy, beneficiary designation, and proceeds. Rule 14(a)(2)(D) independently authorizes a third-party defendant to assert against the original plaintiff a claim arising from the same transaction or occurrence.

7. **77.** Declaratory relief is authorized by 28 U.S.C. §§ 2201-2202.

8. Venue is proper in this District because EFLIC resides here for venue purposes and Dawson selected this forum.

9. The Policy was delivered in Hawaii and identifies Hawaii as the Contract State. Ms. Arrell alleges that Hawaii law governs. Hawaii law, the Policy's entire-contract clause, and the Policy's written beneficiary-change procedure all produce the same result: the attached application controls absent a later owner-signed change received by EFLIC. Haw. Rev. Stat. §§ 431:10-208(a), 431:10-220, 431:10-237, 431:10D-102(a)(2); ECF No. 17-1 at 7, 9.

**COMMON FACTUAL ALLEGATIONS**

10. EFLIC issued the Policy on Christopher's life with a face amount of $2,000,000.

11. The Policy provides that the Policy, riders and endorsements, and attached application make up the entire contract.

12. The Policy's beneficiary provision states: “The Beneficiary is as stated in the application, unless later changed. If two or more persons are named, those surviving the Insured Person will share equally unless otherwise stated.”

13. The signed application states that the total beneficiary designation "must be 100%." Under the "Primary" heading it identifies "DONNE F. DAWSON" as Christopher's sister and "KYLIE M. ARRELL" as his daughter.

14. To the extent that the percentage column is read to contain “100%” beside Dawson and “50%” beside Ms. Arrell, the entries conflict with each other and with the form’s mandatory 100% total instruction, but there is no ambiguity that Ms. Arrell is named as a Primary beneficiary or that 50% is written beside her.

15. On April 26, 2007, Christopher signed an Amendment to Application. The only stated amendment concerned a policy illustration, and the document expressly confirmed that, "in all other respects," the application statements and answers continued, without material change, to be true and complete.

16. The April 26 Amendment therefore reaffirmed Ms. Arrell’s identification as a Primary beneficiary and the 50% written beside her name after the date of the Policy Summary on which Dawson relies.

17. No person is identified in the contingent-beneficiary section.

18. The Policy contains no term directing EFLIC or a court to convert facially inconsistent percentages into relative weights or to reduce a stated percentage by dividing it by the sum of the inconsistent entries.

19. Under Hawaii law, the Policy is to be construed as a whole and its terms are given their plain meaning. The attached application is part of that whole. Haw. Rev. Stat. § 431:10-237.

20. Giving effect to Ms. Arrell's written 50% does not require rewriting her designation. It requires rejecting Dawson’s attempt to convert her own inconsistent 100% entry into a deletion of the separately named daughter and, if necessary, applying the Policy’s equal-share default to the two surviving Primary beneficiaries.

21. The "Policy Summary" separately relied on by Dawson names Dawson alone but expressly states that it provides only an overview and does not represent or amend the Policy's terms.

22. EFLIC pleads that the Contract is comprised solely of the Policy, riders and endorsements, and application, and EFLIC's Contract exhibit omits the Summary.

23. The document at ECF No. 1-1 at 17 is a Delivery Receipt, not the Policy Summary. It acknowledges receipt of the Policy and states that the statements in all parts of the application continued to be true and complete at delivery. It identifies no beneficiary, states no amendment, and does not satisfy the Policy's written change procedure.

24. EFLIC denies that Christopher acknowledged the Policy Summary.

25. EFLIC has no record of any post-issuance request to change the beneficiary.

26. Christopher died on December 19, 2024 while the Policy was in force. At that moment, the contractual right to the death benefit became payable to the person or persons entitled under the then-effective beneficiary designation, subject to adjudication of the competing claims.

27. EFLIC paid Dawson $1,000,000 in principal plus interest. The accompanying material stated that the remaining 50% was due to another beneficiary.

28. Dawson alleges that EFLIC told her counsel that the application identified two beneficiaries, that Dawson was entitled to only 50%, and that EFLIC would pay the remaining 50% upon receipt of the other beneficiary's claim.

29. EFLIC informed Dawson that the application listed two Primary beneficiaries and that Dawson had a 50% share.

30. EFLIC further admits that Dawson is a beneficiary "with at least a 50% share."

31. Ms. Arrell submitted a claim, and EFLIC received it on February 10, 2026.

32. Dawson claims the remaining $1,000,000 and asks the Court to declare Ms. Arrell's written designation an error.

33. EFLIC admits liability for the remaining Policy proceeds and has moved to deposit $1,000,000 plus applicable interest.

34. An actual controversy exists concerning Ms. Arrell’s entitlement to the remaining principal and interest, Dawson’s adverse claim, and the amount EFLIC must deposit or pay.

**COUNT I**
**DECLARATORY JUDGMENT AND ADJUDICATION OF CLAIM TO INTERPLEADED FUNDS**
**(AGAINST EFLIC AND DAWSON)**

35. Ms. Arrell repeats and realleges the preceding paragraphs as if set forth in full.

36. The signed application expressly identifies Ms. Arrell as a Primary beneficiary and places 50% in the percentage column corresponding to her name. Christopher's signed April 26 Amendment to Application and signed Delivery Receipt each reaffirm that the application remained true and complete, and neither document changes Ms. Arrell's designation.

37. Dawson’s alleged conflicting 100% notation cannot be enforced as a sole-beneficiary designation without deleting Ms. Arrell's separate name, relationship, status as Primary beneficiary, and express 50% entry. Nothing in the Policy authorizes that deletion.

38. The Policy's equal-share clause independently resolves any residual conflict: because two surviving persons are named in the same Primary class and the facially invalid 150% set cannot operate as a valid unequal allocation, each receives one-half. That construction is also the one EFLIC has pleaded and implemented by paying Dawson one-half, retaining one-half, and identifying both claimants as adverse claimants to the remaining one-half.

39. The noncontractual Policy Summary and internal electronic record did not amend the attached application. The Summary disclaims amendment power; the later signed Amendment to Application reaffirmed the application; the Delivery Receipt is not the Summary and names no beneficiary; EFLIC itself pleads that the Contract consists of the Policy, riders and endorsements, and application; and EFLIC alleges no later Policy-compliant beneficiary change.

40. Dawson has already received the one-half principal share corresponding to her status as one of two surviving Primary beneficiaries, plus interest, and has no right, title, or interest in Ms. Arrell's one-half.

41. Ms. Arrell is entitled to a declaration that she owns exactly one-half of the $2,000,000 death benefit - $1,000,000 - plus all interest attributable to that share; that Dawson has no right to any portion of Ms. Arrell's share; and that the properly calculated amount must be disbursed to Ms. Arrell promptly after deposit and adjudication.

42. Under Federal Rule of Civil Procedure 57, the Court may order a speedy hearing of this declaratory-judgment claim. The dispositive contract documents are already docketed, and Ms. Arrell requests an early schedule for adjudication under Rule 12(c), Rule 56, or such procedure as the Court directs.

WHEREFORE, Counter-claimant Kylie Arrell requests that the Court enter an Order awarding her funds as the beneficiary of the Policy, consistent with the relief set forth below.

**COUNT II**
**ALTERNATIVE CLAIM FOR CONTRACT BENEFITS, STATUTORY INTEREST, AND CONDITIONAL FEES**
**(AGAINST EFLIC)**

43. Ms. Arrell repeats and realleges the preceding paragraphs and pleads this Count in the alternative under Federal Rule of Civil Procedure Rule 8(d).

44. The Policy and attached application form a valid contract for the benefit of the named beneficiaries, including Ms. Arrell. The Policy promises to pay insurance benefits to the beneficiary upon satisfactory proof of death and proof of the claimant's interest.

45. All conditions applicable to Ms. Arrell have been performed, satisfied, waived, excused, or prevented. EFLIC admits receiving her claim on February 10, 2026 and admits liability for the remaining proceeds.

46. EFLIC may protect itself against Dawson's adverse claim through prompt deposit, but it remains obligated to fund the complete stake. To the extent EFLIC fails to deposit or pay the full $1,000,000 principal and all interest legally attributable to Ms. Arrell's share, it breaches the Policy and owes the shortfall.

47. The Policy provides that EFLIC will add interest in accordance with applicable law. ECF No. 17-1 at 3. Under Hawaii Revised Statutes § 431:10-243(a), read with subsection (c), if this action results in judgment against EFLIC, interest runs from Christopher's death through the verdict, report, or decision at the rate EFLIC currently pays on proceeds left under its interest settlement option, but not less than six percent annually; subsection (b) applies that rate through payment if the action settles before decision.

48. Section 431:10-243(e) prevents duplicate interest only for a period during which EFLIC is required to pay interest under a state or federal interpleader law; it does not erase interest accrued before deposit or permit EFLIC to tender an unexplained lump sum.

49. Ms. Arrell is entitled to the full principal and a transparent, itemized calculation and payment of all contractual, statutory, registry, and post-judgment interest attributable to her share, without deduction by EFLIC and without double recovery.

50. If EFLIC contests its liability to Ms. Arrell or any part of the principal or interest and the Court orders EFLIC to pay benefits, Hawaii Revised Statutes § 431:10-242 provides for reasonable attorneys' fees and costs in addition to the benefits. Ms. Arrell seeks such fees and costs only if the statutory predicates are satisfied.

## PRAYER FOR RELIEF

**WHEREFORE,** Cross-Complainant Kylie Arrell requests that this Court:

**A.** Authorize immediate deposit of the entire remaining $1,000,000 principal plus all applicable interest through the deposit date, without deduction by EFLIC, supported by an itemized calculation, and maintained in the Court Registry Investment System or another interest-bearing registry account pending adjudication;

**B.** Declare that Ms. Arrell is a named Primary beneficiary entitled to exactly one-half of the $2,000,000 death benefit - $1,000,000 - plus all interest attributable to that share;

**C.** Declare that the Policy Summary and internal electronic entry did not amend or supersede the attached application; that the Delivery Receipt is not the Policy Summary and made no beneficiary change; and that the signed April 26 Amendment to Application reaffirmed the application, including Ms. Arrell's Primary-beneficiary designation and 50% entry;

**D.** Declare that Dawson has received the one-half principal share corresponding to her status as one of two surviving Primary beneficiaries and has no right, title, or interest in Ms. Arrell's one-half principal or interest;

**E.** Deny Dawson's request for the remaining proceeds and any injunction preventing payment to Ms. Arrell;

**F.** Direct prompt disbursement to Ms. Arrell of her $1,000,000 principal share together with all contractual and statutory interest accrued before deposit, all registry interest attributable to her share after deposit, and post-judgment interest as applicable;

**G.** Enter judgment against EFLIC for any shortfall between the amount deposited or paid and the complete principal and interest due to Ms. Arrell;

**H.** Award reasonable attorneys' fees and costs under Hawaii Revised Statutes § 431:10-242;

**I.** Deny any deduction of EFLIC's attorneys' fees, costs, delivery charges, offsets, or ordinary business expenses from the beneficiary fund;

**J.** Limit any EFLIC discharge to the principal and interest actually and correctly deposited, and limit any injunction to a duplicative proceeding seeking the same deposited res;

**K.** Order a speedy hearing under Rule 57 and set an early schedule for adjudicating beneficiary entitlement under Rule 12(c), Rule 56, or such procedure as the Court directs;

**L.** Award post-judgment interest under 28 U.S.C. § 1961; and

**M.** Grant such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Ms. Arrell demands a trial by jury on all claims and issues.

Dated: New York, New York
July 16, 2026

Respectfully submitted,

DAMAN & ASSOCIATES, LLP

Jeffrey K. Daman, Esq. (JD7723)
369 Lexington Avenue, Third Floor
New York, New York 10017
Telephone: (646) 556-6649
Facsimile: (424) 645-0754
Email: jeffrey.daman@damanllp.com

**Counsel for Third-Party Defendant and Cross-Complainant**
**Kylie Putman a/k/a Kylie Arrell**

## CERTIFICATE OF SERVICE

I, Jeffrey Daman, certify that on July 16, 2026, I caused the foregoing *Third-Party Defendant Kylie Putman A/K/A Kylie Arrell's Answer to Equitable's Counterclaim and Third-Party Complaint, Counterclaim Against Equitable, Claim Against Plaintiff Donne Dawson, and Jury Demand* to be filed through the Court's CM/ECF system, which will transmit notice of electronic filing to all counsel of record.

/s/ Jeffrey K. Daman
Jeffrey K. Daman